# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

| | | |
|---|---|---|
| **DEVIN P. CHERRY** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 2:23cv91-HSO-BWR** |
| | § | |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY** | § | **DEFENDANT** |

## ORDER OVERRULING PLAINTIFF'S OBJECTION [19]; ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [18]; AND AFFIRMING DECISION OF THE COMMISSIONER

This matter is before the Court on Plaintiff Devin P. Cherry's Objection [19] to the Magistrate Judge's Report and Recommendation [18], which recommends that the Commissioner of Social Security's decision denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") be affirmed. *See* R. & R. [18] at 1, 20. Plaintiff has filed an Objection [19] to the Report and Recommendation [18].

After review of the record and relevant law, the Court finds that Plaintiff's Objection [19] should be overruled, and that the Commissioner's decision should be affirmed because it is supported by substantial evidence and it applied the proper legal standards to evaluate the evidence.

## I. BACKGROUND

Alleging an onset of disability on February 7, 2021, Plaintiff Devin P. Cherry ("Plaintiff" or "Cherry") filed applications with the Social Security Administration for DIB and SSI due to "Seizures, Brain Cancer, Stage 2." *See* R. [11] at 126, 237-

52 (filed restricted access).[1]  The claims were initially denied on September 28, 2021, and upon reconsideration on February 10, 2022.  *See id.* at 41, 125-58.

After Plaintiff submitted a request for hearing, an Administrative Law Judge ("ALJ") held a telephonic hearing on August 2, 2022, to determine whether the claimant was disabled under the Social Security Act (the "Act") and whether he met its insured status requirements.  *See id.* at 41-42.  After concluding that Plaintiff met the insured status requirements of the Act, the ALJ determined at the second step that Plaintiff had the following severe impairments: "seizures, headache and cognitive impairment post oligodendroglioma removal, and mood disorder with depression and anxiety," and that these impairments "cause more than minimal-work limitations," but they were not "severe" within the meaning of the Social Security Act.  *Id.* at 44 (emphasis removed) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the regulations.  *Id.*

Before proceeding to step four of the analysis, the ALJ then found that Plaintiff had a residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with considerations that he should not be required to climb ladders, ropes or scaffolds and should only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs; should avoid more than occasional exposure to hazards including moving machinery and unprotected heights; and should avoid frequent exposure to temperature extremes, vibration, pulmonary irritants including fumes, odors, dusts,

---

[1] The Court will cite the page numbers automatically generated by its Case Management/Electronic Case Files (CM/ECF) system.

> gases; is capable of understanding, remembering and carrying out simple (but not detailed or complex) instructions; and is capable of dealing with occasional, but not frequent, changes in the routine work setting.

*Id.* (emphasis removed). At step four, Plaintiff was found to be unable to perform any past relevant work, *see id.* at 54, but considering his age, education, work experience, and RFC, the ALJ opined at step five that there were significant jobs that exist in significant numbers in the national economy that Plaintiff could perform, *see id.* at 55. The ALJ concluded that Plaintiff had not been under a disability as defined in the Social Security Act from February 7, 2021, through the date of the decision in January 2023. *See id.* at 56.

Plaintiff sought Appeals Council review of the ALJ's decision. Plaintiff submitted new evidence, specifically 16 pages of records from the University of Mississippi Medical Center ("UMMC"), dated from July 18, 2022, to December 31, 2022; 25 pages of records from UMMC dated from January 30, 2023, to April 12, 2023; and a medical source statement from Dr. Mark Anderson ("Dr. Anderson") from April 14, 2023. *Id.* at 7. But the Appeals Council determined that the 2022 UMMC records did not show a reasonable probability that the additional evidence would change the outcome of the decision, and the Appeals Council "did not exhibit this evidence." *Id.* As for the 25-pages of records and medical source statement, the Appeals Council stated the additional evidence did not relate to the time period at issue and would not affect the decision about whether Plaintiff was disabled beginning on or before January 2, 2023. *Id.* Ultimately, the Appeals Council

3

"found no reason under [its] rules to review the Administrative Law Judge's decision," and it denied Plaintiff's request. *Id.* at 6.

Plaintiff then filed a Complaint [1] in this Court, seeking judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). *See* Compl. [1] (filed restricted access). Plaintiff insists that he "is entitled to Social Security Disability benefits under the Social Security Act," and asks that "this case may be returned to the Defendant for a determination of monthly benefits payable to Plaintiff . . . ." *Id.* at 2. Defendant Commissioner of Social Security ("Defendant" or the "Commissioner") answered, *see* Ans. [10] (filed restricted access), and both Plaintiff and the Commissioner filed Briefs [15], [17], *see* Br. [15] (filed restricted access); Br. [17] (filed restricted access). On January 27, 2025, United States Magistrate Judge Bradley W. Rath entered a Report and Recommendation [18] recommending that the ALJ's decision be affirmed and that this civil action be dismissed with prejudice. *See* R. & R. [18] at 20 (filed restricted access).

Plaintiff objects to the Report and Recommendation [18] in three respects, contending that: (1) "[t]he ALJ erred in his consideration of the opinion evidence in this case by creating a decision and RFC that is not supported by substantial evidence" (Ground One); (2) "[t]he ALJ erred by failing to order the requested Consultative Examination thereby failing to adequately develop the record" (Ground Two); and (3) "[t]he Appeals Council erred when they failed to properly consider medical evidence" (Ground Three). Obj. [19] at 2, 4, 8 (emphasis removed) (filed restricted access).

4

II.  DISCUSSION

A.  Standard of Review

Because Plaintiff has filed an Objection [19] to the Magistrate's Report and Recommendation [18], this Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  In reviewing the Commissioner's decision, a federal court considers only whether the ALJ applied the proper legal standards and whether substantial evidence in the record supports the decision. *See Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations."  *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019).  While substantial evidence is "more than a mere scintilla," it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 103 (quotations omitted).

In applying the substantial evidence standard, a court must scrutinize the record to determine whether such evidence is present, but a court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *See Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).  Any conflicts in the evidence are for the Commissioner to resolve, and "[i]f the Commissioner's fact findings are supported by substantial evidence, they are conclusive."  *Id.*

B.     Standard for Entitlement to Social Security Benefits

A claimant bears the burden of proving that he or she suffers from a disability and is entitled to benefits. *See id.* The Social Security Act defines a "disability," in relevant part, as

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. § 423(d)(1)(A). The statute further provides that

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

*Id.* § 423(d)(2).

In determining whether a claimant is disabled, the Commissioner engages in a five-step sequential analysis, which considers whether:

> (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work. If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability.

*Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation and citations omitted).

6

As part of the analysis, the Commissioner assesses the claimant's RFC before proceeding to step four. *See Jones v. O'Malley*, 107 F.4th 489, 492 (5th Cir. 2024); *Perez*, 415 F.3d at 461-62. "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez*, 415 F.3d at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)).

The RFC "is used at both steps four and five of the sequential analysis: at the fourth step to determine if the claimant can still do his past relevant work, and at the fifth step to determine whether the claimant can adjust to any other type of work." *Id.* at 462 (citing 20 C.F.R. § 404.1520(e)). In assessing RFC, "an ALJ examines the medical evidence in the record, including the testimony of physicians and the claimant's medical records." *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021). "[A]n ALJ may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir.1995)). "Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Id.* (citing *Ripley*, 67 F.3d at 557). This is known as a *Ripley* error, but to justify reversal, a claimant must show prejudice. *See Keel*, 986 F.3d at 555 n.3 (citing *Ripley*, 67 F.3d at 557). "[T]he determination of residual functional capacity is the sole responsibility of the ALJ," and what a claimant characterizes as the ALJ substituting his opinion may actually be "the

7

ALJ properly interpreting the medical evidence to determine his capacity for work." *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012).

C.  Plaintiff's Objection [19]

1.  Ground One

Plaintiff appears to assert a *Ripley* error, as he contends that there is no support in the record from an examining or non-examining physician for the RFC assigned by the ALJ that he "is capable of understanding, remembering and carrying out simple (but not detailed or complex instructions; and is capable of dealing with occasional, but not frequent, changes in the routine work setting." Obj. [19] at 2-3 (filed restricted access). According to Plaintiff, the ALJ found Dr. Jesse Dees' opinions on this point not persuasive, "while bizarrely finding Plaintiff's cognitive impairment, depression, and anxiety severe impairments." *Id.* at 3. Plaintiff complains that, although the ALJ acknowledged that "these are severe impairments," he "does not give a valid reason for omitting this restriction from the RFC assessed to Plaintiff." *Id.* He contends that the ALJ improperly "cherry picked" the evidence to support a preferred conclusion. *See id.* at 3-4.

In assessing Plaintiff's RFC, the ALJ examined the medical evidence in the record, including the testimony of physicians and Plaintiff's medical records, as required. *See, e.g.*, R. [11] at 49-54 (filed restricted access); *Webster*, 19 F.4th at 718. In assessing the evidence on these points, the ALJ stated that,

> [o]n initial review, Dr. Jesse Dees, DDS psychologist, found the claimant had moderate functional limitations in all areas. He found the claimant capable of understanding, remembering, and carrying out simple two-step instructions in order to perform routine, repetitive tasks

8

> for two-hour blocks of time during an eight-hour day. The claimant would likely function best in a non-interpersonally intensive work environment. In that context, psychological factors would not significantly interfere with work performance, and the claimant would be capable of relating appropriately to coworkers and supervisors. Moderate levels of supervision would be necessary to maintain work performance and to assist the claimant in adapting to change and in planning in the work context (2A, 4A). On reconsideration, Dr. David Powers, psychologist, found no medically determinable mental impairment (5A, 8A). The prior administrative findings of Dr. Dees are only partially persuasive. The undersigned finds that limitation to simple instructions and occasional changes in the work setting generally persuasive as they are sufficiently supported by the objective and clinical evidence. The propounded moderate limitation in social interaction, and the need for enhanced supervision referred to in Dr. Dees' assessed mental residual functional capacity, however, are not persuasive, as they are not supported by the longitudinal record to be shown to have persisted for any twelve-month period. The finding of Dr. Powers at reconsideration that the claimant had no mental medically determinable impairment is not persuasive, given ongoing treatment for depression with medication and reported neurocognitive difficulties following the claimant's oligodendroglioma removal.

R. [11] at 53 (filed restricted access).

In determining Plaintiff's RFC, the ALJ first considered whether there were underlying medically determinable physical and mental impairments that could be reasonably expected to produce Plaintiff's pain or other symptoms, and then evaluated "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." *Id.* at 48. To the extent the ALJ found that statements concerning "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the [ALJ considered] other evidence in the record to determine if [Plaintiff's] symptoms limit the ability to do work-related activities." *Id.*

Plaintiff contends that in assigning the RFC, the findings that he is "capable of understanding, remembering and carrying out simple (but not detailed or complex) instructions" and "is capable of dealing with occasional, but not frequent changes in the routine work setting," are not supported by an examining or non-examining physician. Obj. [19] at 3 (filed restricted access); *see also* R. [11] at 47-48 (filed restricted access). According to Plaintiff, the ALJ improperly found that Dr. Dees' assessment of his mental residual functional capacity, concerning moderate limitation in social interaction and the need for enhanced supervision, unpersuasive.

The ALJ considered Dr. Dees' findings that Plaintiff had moderate functional limitations in all areas. R. [11] at 53 (filed under seal). The ALJ stated that "[t]he prior administrative findings are only partially persuasive" and found that "limitation to simple instructions and occasional changes in the work setting generally persuasive as they are sufficiently supported by the objective and clinical evidence." *Id.* But the ALJ found the moderate limitation in social interaction and need for enhanced supervision referred to by Dr. Dees were not persuasive because they had not been shown to have persisted for any twelve-month period. *See id.* Despite Plaintiff's argument to the contrary, the ALJ proffered a valid reason for omitting Dr. Dees' suggested restriction from Plaintiff's RFC. *See id.*; Obj. [19] at 3 (filed restricted access).

As for depression and anxiety, the ALJ considered the relevant evidence and noted that Plaintiff "has received no professional mental health treatment and

depression appears to be well controlled with medication." R. [11] at 51 (filed restricted access); *see also id.* at 48 (Plaintiff testified that "anxiety comes along with depression."). Considering testing performed by psychologist Dr. Edward Manning and more recent treatment notes from Plaintiff's neurooncologist, Dr. Nawal Shaikh, the ALJ concluded that Plaintiff "has moderate limitation in this area, which is accommodated in the residual functional capacity by finding [he] is capable of understanding, remembering and carrying out simple (but not detailed or complex) instructions and of dealing with occasional, but not frequent, changes in the routine work setting." *Id.* at 46.

Although Plaintiff argues that the ALJ failed to account for his severe impairments of cognitive impairment, depression, and anxiety, the record reveals that the ALJ in fact did account for Plaintiff's supported limitations in the RFC assessment. *See* Obj. [19] at 3 (filed restricted access). The ALJ found Plaintiff has the RFC to perform "light work," with considerations that

> he should not be required to climb ladders, ropes or scaffolds and should only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs; should avoid more than occasional exposure to hazards including moving machinery and unprotected heights; and should avoid frequent exposure to temperature extremes, vibration, pulmonary irritants including fumes, odors, dusts, gases . . . .

*Id.* at 47 (emphasis removed). And the ALJ found Plaintiff is "capable of understanding, remembering and carrying out simple (but not detailed or complex) instructions" and "is capable of dealing with occasional, but not frequent changes in the routine work setting." *Id.* at 47-48.

11

Based upon the foregoing, Plaintiff's argument that the ALJ's RFC assessment runs contrary to all of the medical opinion evidence and is not supported by substantial evidence is unavailing; in fact, there is substantial evidence in the record to support this RFC. *See id.* Plaintiff cites no evidence that the ALJ's RFC assessment failed to fully account for his cognitive impairment, depression, and anxiety. As required, the ALJ interpreted the medical evidence to determine Plaintiff's capacity to work. *See id.*; *Taylor*, 706 F.3d at 603.

As for Plaintiff's allegation that the ALJ engaged in improper cherry-picking of evidence, *see* Obj. [19] at 3-4, the Fifth Circuit has explained that "[t]here is a line between cherry-picking and resolving conflicting evidence," *Hollinger v. Kijakazi*, 857 F. App'x 213, 214 (5th Cir. 2021), and "[c]onflicts in evidence are for the Secretary and not the courts to resolve," *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (quotation omitted). Based upon the record here, the Court cannot conclude that the ALJ erred in rejecting Dr. Dees' opinion to the extent it was inconsistent with substantial evidence, or in fulfilling his obligation to weigh the evidence received. *See Hollinger*, 857 F. App'x at 215. Plaintiff's objection in Ground One should be overruled.

2. <u>Ground Two</u>

According to Plaintiff, "the ALJ committed reversible and prejudicial error by failing to order the requested consultative examination in this case," because "the Social Security Administration has burdened itself with the obligation to assist claimants in developing the record in a claim for benefits." Obj. [19] at 4 (citing 20

C.F.R. § 404.1512(b)) (filed restricted access).   Plaintiff maintains that the ALJ had a duty to fully and fairly develop the facts, and his failure to order the requested consultative examination "caused great prejudice to Plaintiff as there is no opinion evidence in the file to assist in determining Plaintiff's functional limitations."   *Id.* at 5.   Plaintiff contends that a consultative examination "is necessary to make an informed decision with respect to the impairments in Plaintiff's feet and his functional capacities related to his mental and psychological impairments."   *Id.* He posits that "[t]his case is a clear example of [a] claim where a consultative examination is needed in order to determine Plaintiff's psychological functional limitations."   *Id.* at 7.

20 C.F.R. § 404.1512(b) provides that the Social Security Administration ("SSA") will develop a claimant's complete medical history for at least the 12 months preceding the month he files his application, and the SSA "*may* ask [the claimant] to attend one or more consultative examinations at [the SSA's] expense." 20 C.F.R. § 404.1512(b)(1)-(2) (emphasis added).   "The ALJ has the discretion to order a consultative examination."   *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989).   "A consultative examination is required to develop a full and fair record only if the record establishes that such an examination is necessary to enable the ALJ to make the disability decision."   *Webster*, 19 F.4th at 720 (quotations and alternations removed).

It is an abuse of discretion to fail to order a consultative examination when "the record establishes that such an examination is *necessary* to enable the ALJ to

13

make the disability decision." *Hardine v. Kijakazi*, No. 21-60226, 2022 WL 2070399, at *2 (5th Cir. June 8, 2022) (emphasis in original) (quoting *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016)).   But where the record is replete with medical documents that span years, and nothing suggests that the ALJ needed any more medical information to reach an informed decision about whether the claimant was disabled, then the ALJ's decision was based upon substantial evidence in a sufficiently developed record, and he does not err in declining to order a consultative examination.   *See Webster*, 19 F.4th at 720.   And, even if there was error in this regard, a court will not reverse the ALJ's decision unless the claimant was prejudiced, meaning the claimant "could and would have adduced evidence that might have altered the result."   *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (quotation omitted).

As in *Webster,* the ALJ's decision in this case was based on substantial evidence in a fully developed record, and nothing suggests that the ALJ needed additional medical information to decide whether Plaintiff was disabled.   *See Webster*, 19 F.4th at 720.   Nor is there evidence that suggests a consultative examination would have resulted in a finding of more severe limitations than those incorporated into the RFC assigned by the ALJ.   The RFC assessment is supported by substantial evidence, and simply put, "[a]lthough a consultative examination may have been helpful, the record does not support that more information was necessary in order for the ALJ to make the decision about disability."   *Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *4 (5th Cir. June 14, 2023).   The

14

Court finds that the ALJ did not err in failing to order a consultative examination, and Ground Two of Plaintiff's Objection [17] should be overruled.[2]

3.    Ground Three

Plaintiff contends that the Appeals Council erred when it failed to properly consider new and material medical evidence, specifically certain records from UMMC and Dr. Anderson's physician source statement.  Obj. [19] at 8 (filed restricted access).  "Plaintiff argues that the 16 pages of evidence and the 25 pages of evidence are new, material, relate to the period of time at issue, and further show a reasonable probability that the evidence would change the outcome of the decision," *id.*, and "that this evidence, if before the ALJ, clearly would change the outcome of the decision," *id.* at 9.

The Appeals Council will review a case if any one of several things occur, including if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5).  "The Appeals Council is permitted to consider additional evidence only if it is new, material, and related to the period on or before the ALJ's hearing decision."  *Martinez v. Astrue*, 252 F. App'x 585, 587 (5th Cir. 2007). "[E]ven when new and material evidence submitted to an Appeals Council is significant and casts doubt on the soundness of the ALJ's findings, the Appeals

---

[2] Even if the ALJ erred by failing to order the consultative examination, Plaintiff points to no evidence that would have been adduced that could have changed the result, meaning he has not shown prejudice.  *See Brock*, 84 F.3d at 728-29.  The Objection [17] should be overruled for this separate reason as well.  *See id.*

15

Council does not err in refusing to review the claimant's case if it can be determined that substantial evidence nevertheless supports the ALJ's denial of benefits." *Hardman v. Colvin*, 820 F.3d 142, 151 (5th Cir. 2016) (quotations omitted).

Also, "the regulations do not require the Appeals Council to discuss the newly submitted evidence, nor is the Appeals Council required to give reasons for denying review." *Whitehead v. Colvin*, 820 F.3d 776, 780 (5th Cir. 2016). When the Appeals Council denies a claimant's request for review, as it did in this case, that denial becomes part of the Commissioner's final decision, but the ALJ's decision remains binding. *Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015) (citing 20 C.F.R. § 404.981).

In Plaintiff's case, the Appeals Council found the pertinent records from UMMC, dated from July 28, 2022, to December 31, 2022, "do[ ] not show a reasonable probability that it would change the outcome of the decision." R. [11] at 7 (filed restricted access); *see also id.* at 63-67, 72-74, 83-91. In his Objection [19], Plaintiff focuses on what he refers to as a December 23, 2022, assessment and states that this evidence submitted to the Appeals Council demonstrates that

> [t]his 33-year-old mad [sic] with neurocognitive change and seizure related to a right frontal oligodendroglioma was referred for abnormal MRI brain concerning for CNS demyelination. He does not describe a prior demyelinating event so diagnostic criteria cannot be applied. He possibly has radiologically isolated syndrome at risk for MS. If not for his CNS malignancy, I would recommend him start DMT to prevent development of MS. Repeat imaging is due in January and we will try to get cord imaging at this time. Seizures are not controlled so we will increase his Lamictal.

16

Obj. [19] at 8 (filed restricted access) (quoting R. [11] at 67).[3]  Plaintiff contends that he was "on the cusp of being found disabled in the decision by the ALJ . . . with such a limited RFC," that "less compelling additional evidence would need to be to create a reasonable probability of a different result."  *Id.*  Further, he claims that "[t]he new evidence makes clear that Plaintiff did in fact have a diagnosis of multiple sclerosis," or "MS."  *Id.* at 10.

But the UMMC medical record does not state that Plaintiff had been diagnosed with MS, only that he was "at risk for MS," and that he would have been started on "DMT," or disease-modifying therapy, "to prevent development of MS," if not for his cancer.  R. [11] at 62 (filed restricted access).  This does not demonstrate that Plaintiff suffered from MS prior to the hearing decision date, and there is not a reasonable probability that this evidence would change the outcome of the decision.  *See* 20 C.F.R. § 404.970(a)(5); *Martinez*, 252 F. App'x at 587.  Nor does anything else in the UMMC records from July 28, 2022, to December 31, 2022, support a finding of a reasonable probability of change.  *See* R. [11] at 63-67, 72-74, 83-91 (filed restricted access); 20 C.F.R. § 404.970(a)(5); *Martinez*, 252 F. App'x at 587.

As for the new UMMC records dated January 30, 2023, to April 12, 2023, and the medical source statement from Dr. Anderson dated April 14, 2023, the Appeals Council noted that the ALJ decided Plaintiff's case through January 2, 2023, and that "[t]his additional evidence does not relate to the period at issue."  R. [11] at 7

---

[3]  The UMMC neuroimmunology new patient evaluation Plaintiff quotes is actually dated December 13, 2022, not December 23, 2022.  *See* R. [11] at 63-67.

17

(filed restricted access). The Appeals Council therefore concluded that "it does not affect the decision about whether you were disabled beginning on or before January 2, 2023," and it further advised Plaintiff that if he wished for the Commissioner "to consider whether [he was] disabled after January 2, 2023, [he] need[ed] to apply again." *Id.*

Dr. Anderson's physician source statement was a fill-in-the-blank form dated April 14, 2023, and the questions were generally written in the present or future tense. *See, e.g., id.* at 13 (asking, for example, "Does you [sic] patient have a condition that is expected to last 12 months or more?" and "Would your patient need to take unscheduled breaks during a normal workday due to their impairment?"). Also, as the Appeals Council correctly found, the UMMC records were dated from January 30 to April 12, 2023, which were all after the ALJ's January 2, 2023, decision. *See id.* at 38. But the Appeals Council may only review new evidence if it "relates to the period on or before the date of the hearing decision . . . ." 20 C.F.R. § 404.970(a)(5); *see also Martinez*, 252 F. App'x at 587. Because, on their face, Dr. Anderson's physician source statement and the January 30 to April 12, 2023, UMMC records did not relate to a period on or before January 2, 2023, and thus did not affect the decision about whether Plaintiff was disabled beginning on or before January 2, 2023, the Appeals Council properly declined review. *See* 20 C.F.R. § 404.970(a)(5); *Martinez*, 252 F. App'x at 587. Ground Three of Plaintiff's Objection [19] should be overruled.

III. <u>CONCLUSION</u>

As required by 28 U.S.C. § 636(b)(1), the Court has conducted an independent de novo review of the record and the matters raised in Plaintiff's Objection [19] and concludes that the Commissioner's decision should be affirmed and that this civil action should be dismissed with prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiff Devin P. Cherry's Objection [19] to the Magistrate Judge's Report and Recommendation [18] is **OVERRULED**, and the Report and Recommendation [18] of United States Magistrate Judge Bradley W. Rath entered on January 27, 2025, is **ADOPTED** as the finding of this Court.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Commissioner of Social Security's decision is **AFFIRMED**, and this civil action is **DISMISSED WITH PREJUDICE**. A separate Final Judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 12th day of March, 2025.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE